UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARY WHITE,

        Plaintiff,

vs.                                       Case No. 8:06-CV-1626-T-27MAP

SCHOOL BOARD OF HILLSBOROUGH
COUNTY,

        Defendant.
_____/

## ORDER

**BEFORE THE COURT** is Defendant's Motion to Dismiss the Plaintiff's Amended Complaint, and, Alternatively, Motion for Consolidation (Dkt. 19), to which Plaintiff has responded in opposition (Dkt. 20). Upon consideration, Defendant's Motion is GRANTED in part and DENIED in part.

### *Background*

In this case, *pro se* Plaintiff Mary White, an African-American, brings various federal and state law claims arising from Defendant Hillsborough County School Board's termination of the charter for Wilbesan Charter School ("Wilbesan") in August 2005. Wilbesan opened as a charter school in July 2003, pursuant to a contract between Wilbesan and Defendant. (Dkt. 18, ¶ 6). Plaintiff was the director of Wilbesan. *Id.* In the Amended Complaint, Plaintiff alleges that Defendant's employee, Charlene Staley, was angered by White's efforts to have a "*black military man*" certified as a vocational teacher. (Dkt. 18, ¶¶ 6-7). Plaintiff alleges that Staley told her that she

1

was going to close Wilbesan and "began a malicious negative campaign of placing White in a false light to destroy the contract between White and Wilbesan." (Dkt. 18, ¶ 7).

Specifically, Plaintiff alleges that Staley and two employees of Hillsborough County Fire Rescue engaged in a conspiracy to close Wilbesan. (Dkt. 18, ¶¶ 109-29). Plaintiff alleges that Staley refused to honor Wilbesan's existing fire safety inspection report and required another fire safety inspection, which Plaintiff contends violated statutory requirements. (Dkt. 18, ¶¶ 115-18). Plaintiff alleges that the fire safety inspection rules were enforced against Wilbesan, but not against "white owned and operated" charter schools with similar violations. (Dkt. 18, ¶¶ 17-22). Plaintiff also alleges that she reported an unidentified falsified safety report to Defendant's "Chief Officer" on June 20, 2005. (Dkt. 18, ¶ 141). Plaintiff alleges that Defendant terminated Wilbesan's charter on August 4, 2005, in retaliation for her reporting the allegedly falsified fire safety report and for attempting to have the vocational teacher certified. (Dkt. 18, ¶¶ 15, 53-54).

Plaintiff filed the instant case alleging eleven claims: Disparate Treatment in Violation of 42 U.S.C. § 1983 and Fourteenth Amendment to the U.S. Constitution (Count I); Tortious Interference of White's Contract with Wilbesan which Resulted in Violation of the Fourteenth Amendment Right to Property and 42 U.S.C. § 1983 (Count II); Retaliation in Violation of the First Amendment of the U.S. Constitution and 42 U.S.C. § 1983 (Count III); Defamation by Libel (Count IV); Hostile Work Environment (Count V); Deprivation of White's Property without Due Process of Law in Violation of the Fourteenth Amendment and 42 U.S.C. § 1983 (Count VI); Selective Enforcement of Laws in Violation of Fourteenth Amendment and 42 U.S.C. § 1983 (Count VII); Unequal Protection of Laws in Violation of the U.S. Constitution Fourteenth Amendment and 42 U.S.C. § 1983 (Count VIII); Civil Conspiracy to Deprive White of her Civil Rights that Resulted in Selective Enforcement of the

Laws and Denial of Equal Protection of Laws (Count IX); Action for Neglect to Prevent Civil Rights Violation (Count X); and Florida Whistleblower's Act pursuant to Fla. Stat. § 112.3187 (Count XI).

Pending before this Court is a separate suit by Wilbesan against Defendant (Case No. 8:05-cv-2341-T-27TBM) ("related case"). Plaintiff originally brought several Fourteenth Amendment claims in the related case, which this Court dismissed for lack of jurisdiction because Plaintiff lacked standing to bring the claims. (Dkts. 32, 52). In the instant motion to dismiss, Defendant argues that Plaintiff's claims in this case should be dismissed based on the preclusive effect of the Court's prior decision regarding Plaintiff's standing. In addition, Defendant argues that several of Plaintiff's claims should be dismissed for failure to state a claim, or, in the alternative, consolidated with the related case. As set forth below, Defendant's motion to dismiss is granted as to Counts I, II, V, VI, VII, VIII, IX, X, and XI and denied as to Counts III and IV.

### *Standard*

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although a complaint need not include detailed factual allegations, it must contain sufficient factual allegations, which, when taken as true, "raise a right to relief above the speculative level." *Id.* at 1964-65. A conclusory statement of the elements of a cause of action will not suffice to state a claim under Rule 8. *Id.* A well-pleaded complaint, however, may survive a motion to dismiss even if it appears "that recovery is very remote and unlikely." *Id.* at 1965 (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)). In addition, the complaint of a *pro se* plaintiff is to be construed more liberally than formal pleadings drafted by lawyers. *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990).

*Discussion*

## A. Issue Preclusion

Defendant first argues that the doctrine of collateral estoppel, or "issue preclusion," bars each of Plaintiff's claims. Issue preclusion prevents relitigation of an issue of fact or law that has been litigated and decided in a prior suit if: (1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior suit; (3) the determination of the issue was a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue. *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986). Federal principles of issue preclusion govern the preclusive effect of prior federal decisions. *CSX Transp., Inc. v. Brotherhood of Maintenance of Way Employees*, 327 F.3d 1309, 1316-17 (11th Cir. 2003).

In Counts I, VI, VII, and VIII of the Amended Complaint, Plaintiff asserts claims for disparate treatment, deprivation of due process, selective enforcement, and unequal protection of laws in violation of the Fourteenth Amendment and 42 U.S.C. § 1983. In the related case, Plaintiff previously made almost identical claims for "selective enforcement of laws, unequal protection of laws and disparate treatment" in violation of the Fourteenth Amendment and 42 U.S.C. § 1983. (Case No. 05-cv-2341, Dkt. 12, Count I, ¶¶ 40-55). The Plaintiffs in the related case also argued that they maintained a claim for denial of due process, which the Magistrate accepted in ruling on the motion to dismiss. (Case No. 05-cv-2341 Dkt. 32 at 2 n.3; 3; Dkt. 12, ¶¶ 9-10).

In the related case, Plaintiff claimed that Defendant arbitrarily singled out Wilbesan for closure based on fire safety violations, which resulted in the deprivation of her income as director. Based on these allegations, the Court determined:

4

> White has not alleged or otherwise demonstrated an injury in fact for standing purposes. Here, even assuming that the School Board had a racially discriminatory policy or custom as alleged, the enforcement of that policy or custom in this instance was directed at the school and infringed no rights of White guaranteed under the Fourteenth Amendment or by contract. Rather, it was Wilbesan's charter and its right to operate a charter school that were infringed by the allegedly wrongful termination of the charter contract... Although White lost her position and income as a result of School Board's actions, this was not the consequence of an infringement on her own legally protected interests. Here, White was and is free to pursue her vocation, even that of operating another charter school if she wishes to do so. (Case No. 05-cv-2341, Dkt. 32 at 7).

Plaintiff has alleged materially identical facts and claims in this case, which, as Defendants argue, necessitates the same conclusion that Plaintiff lacks standing under issue preclusion principles. *Villas of Lake Jackson, Ltd. v. Leon Co.*, 884 F. Supp. 1544, 1556 (N.D. Fla. 1995) (applying collateral estoppel to standing issue); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006); *see also Perry v. Sheahan*, 222 F.3d 309, 318 (7th Cir. 2000) (addition of new facts does not prevent preclusive effect of dismissal for lack of jurisdiction due to standing). In Counts I, VI, VII, and VIII, Plaintiff once again attempts to improperly recover personally for actions allegedly taken by Defendant against Wilbesan, and she fails to allege any illegal conduct directed at her, individually, by Defendant. Because Plaintiff's standing to bring these claims was previously determined, after Plaintiff had a full and fair opportunity to litigate the issue, Counts I, VI, VII, and VIII must be dismissed.

Accordingly, Plaintiff's claims for Disparate Treatment in Violation of 42 U.S.C. § 1983 and Fourteenth Amendment to the US Constitution (Count I); Deprivation of White's Property without Due Process of Law in Violation of the Fourteenth Amendment and 42 U.S.C. § 1983 (Count VI); Selective Enforcement of Laws in Violation of Fourteenth Amendment and 42 U.S.C. § 1983 (Count VII); and Unequal Protection of Laws in Violation of the U.S. Constitution Fourteenth Amendment

and 42 U.S.C. § 1983 (Count VIII) are dismissed **with prejudice**.

Plaintiff's remaining claims are not subject to the preclusive effect of this Court's decision in the related case. As Defendant notes, the doctrine of claim preclusion does not apply in this case because "the dismissal of a complaint for lack of jurisdiction does not adjudicate the merit so as to make the case res judicata." *Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980). The remaining claims are therefore addressed in turn.

### B. Federal Claims

*1. Conspiracy*

In Counts IX and X, Plaintiff alleges that Staley and two members of Hillsborough County Fire Rescue (HCFR), Frank Fernandez and Jimmy Whigham, conspired to close Wilbesan based on selective enforcement of the fire safety rules against Wilbesan. (Dkt. 18, ¶¶ 109-14). Specifically, Plaintiff alleges that Whigham's August 3, 2005 fire safety inspection violated statutory provisions, that Fernandez sent the fire inspection to Defendant, that Staley and Fernandez issued a legally insufficient cease and desist order, and that Defendant terminated Wilbesan's charter based on the alleged fire safety violations. (Dkt. 18, ¶¶ 118-24).

Count IX of the Amended Complaint is brought pursuant to 42 U.S.C. § 1985(3). (Dkt. 18, ¶ 110). In order to state a claim for conspiracy pursuant to § 1985(3), Plaintiff must allege: (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002).

As discussed above, Plaintiff does not have standing to bring claims pursuant to the Fourteenth Amendment for the closure of Wilbesan. Accordingly, Plaintiff does not have standing to sue for the alleged conspiracy to close Wilbesan in violation of the Fourteenth Amendment. *Cf. Denney v. City of Albany*, 247 F.3d 1172, 1190-91 (11th Cir. 2001) (because plaintiffs' substantive discrimination claims failed on the merits, they could not sustain a § 1985 claim based on those violations).

In addition, to successfully maintain a conspiracy claim, Plaintiff must allege that "the conspirators were motivated by . . . racial, or otherwise class-based, invidiously discriminatory intent." *Kearson v. S. Bell Tel. & Tel. Co.*, 763 F.2d 405, 407 (11th Cir. 1985). Plaintiff specifically alleges that the conspiracy "was motivated by an invidiously discriminatory animus towards White for reporting a falsified safety report and writing a letter of waiver." (Dkt. 18 ¶ 109). Plaintiff therefore fails to allege the requisite racial or class-based invidiously discriminatory intent. *See Kearson*, 763 F.2d at 407 (upholding dismissal of black plaintiff's § 1985 claim that the alleged conspirators were motivated to deprive him of continuous telephone service).

Count X of the Amended Complaint is brought pursuant to 42 U.S.C. § 1986. (Dkt. 18 ¶ 138). To state a claim under § 1986, Plaintiff must allege that Defendant "knew of a § 1985(3) conspiracy, w[as] in a position to prevent the implementation of that conspiracy, and neglected or refused to prevent it." *Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997). Liability pursuant to § 1986 requires a violation of § 1985. *Id.* Because Plaintiff has failed to allege a conspiracy pursuant to 42 U.S.C. § 1985, her claim pursuant to § 1986 fails as well.

Plaintiff's claims for Civil Conspiracy to Deprive White of her Civil Rights that Resulted in

Selective Enforcement of the Laws and Denial of Equal Protection of Laws (Count IX) and Action for Neglect to Prevent Civil Rights Violation (Count X) are accordingly dismissed **with prejudice**.

2.  *First Amendment Retaliation*

In Count III, Plaintiff alleges that Defendant closed Wilbesan in retaliation for Plaintiff's recommendation to hire a black vocational teacher and for reporting the allegedly falsified fire safety report. (*See e.g.*, Dkt. 18, ¶¶ 53, 55, 57, 58). To state a First Amendment retaliation claim, Plaintiff must allege that: (1) her speech or act was constitutionally protected; (2) Defendant's retaliatory conduct adversely affected her protected speech; and (3) there is a causal connection between the retaliatory actions and the adverse effect on speech. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). Defendant argues that any adverse action was taken against Wilbesan, not Plaintiff, and that Plaintiff's claims fails because her speech was not constitutionally protected.

In arguing that Plaintiff has not suffered an adverse action, Defendant is essentially challenging the sufficiency of Plaintiff's alleged injury, and thus, her standing to bring this claim. An "injury in fact," for standing purposes, is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotations omitted). "[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan*, 504 U.S. at 562. However, the requirement for an injury in fact "does not exclude injury produced by determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 169 (1997). Indeed, the Seventh Circuit Court of Appeals has upheld a First Amendment retaliation claim brought by the individual owners of a business based on a municipality's allegedly retaliatory enforcement of a sign

8

ordinance against the business. *Rasche v. Village of Beecher*, 336 F.3d 588, 591 n.1 (7th Cir. 2003); *see also Lujan*, 504 U.S. at 566 ("It is clear that the person who observes or works with a particular animal threatened by a federal decision is facing perceptible harm, since the very subject of this interest will no longer exist").

Similarly, Plaintiff alleges that Defendant retaliated against her by closing the charter school she opened and directed. Plaintiff alleges in Count III that she personally engaged in protected activity under the First Amendment, that Defendant retaliated by closing her school, and that she has been unable to open another charter school. Therefore, while Plaintiff remains a "concerned bystander" for the purposes of Fourteenth Amendment claims that Defendant treated white-run charter schools differently than Wilbesan, she has alleged a sufficiently concrete and individualized injury as a result of the exercise of her personal First Amendment rights.[1] This suffices to state "general factual allegations of injury resulting from the defendant's conduct," which is all that is required at the pleading stage. *Bennett*, 520 U.S. at 168.

Defendant also argues that Plaintiff's speech was not on a matter of public concern, because her complaints were made about Wilbesan and the termination of Wilbesan's charter. The Supreme

---

[1] As set forth in the Court's order on the motion to dismiss in the related case, the Eleventh Circuit case, *Koziara v. City of Casselberry* supported the rejection of Plaintiff's standing for the equal protection claims. 392 F.3d 1302 (11th Cir. 2004) (dancer in a bar subject to license revocation did not have standing where enforcement of license ordinance was not directed at her and she continued to pursue her occupation). Plaintiff's First Amendment retaliation claim in this case differs from the claim at issue in *Koziara* because Plaintiff is alleging that her *own* expression was chilled by the closure of Wilbesan.

Indeed, Plaintiff's claim is analogous to a claim for retaliation by a constructive discharge, in which an employer coerces an employee's termination through means other than firing. *See e.g., Akins v. Fulton County*, 420 F.3d 1293, 1302 (11th Cir. 2005). This case differs from those in which courts have held that a plaintiff, who has *not* engaged in protected activity, may not maintain a claim for retaliation based on an adverse employment action taken because of a close family member's own protected activity. *See Singh v. Green Thumb Landscaping, Inc.*, 390 F. Supp. 2d 1129, 1135-36 (M.D. Fla. 2005) (surveying cases). In this case, Plaintiff engaged in the protected activity.

9

Court has held that "the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities." *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1961 (2006). First, it is not clear from the allegations of the Amended Complaint that the letters Plaintiff relies on as protected speech were written pursuant to her official responsibilities. Assuming, for purposes of this motion to dismiss, that Plaintiff was a public employee whose speech was governed by the standard set forth in *Garcetti*,[2] it is likewise unclear in what context the letters were written. *Cf. Garcetti*, 126 S.Ct. at 1959-60 (engaging in factual inquiry as to the nature of plaintiff's duties as a calendar deputy, the circumstances giving rise to the allegedly protected memorandum, and the content of the memorandum). Defendant's motion to dismiss is therefore denied as to Plaintiff's claims for Retaliation in Violation of the First Amendment of the U.S. Constitution and 42 U.S.C. § 1983 (Count III).

*3.  Hostile Work Environment*

In Count V, Plaintiff brings a claim for "hostile work environment." An action pursuant to 42 U.S.C. § 1983 may be maintained against a government employer for racial harassment in violation of the Equal Protection clause of the Fourteenth Amendment. *Johnson v. City of Fort Lauderdale*, 148 F.3d 1228, 1231 (11th Cir. 1998). In order to state a claim for hostile work environment racial harassment, Plaintiff must allege that: (1) she belonged to a protected group; (2) she was subjected to unwelcome racial harassment; (3) the harassment was based upon her race; (4) the harassment affected the conditions of her employment; (5) Defendant acted under color of law;

---

[2] Should Defendant wish to pursue this line of argument in a dispositive motion, the Court will require briefing on Plaintiff's status as a public employee. *See e.g., P.J. v. Gordon*, 359 F. Supp. 2d 1347, 1349-50 (S.D.Fla. 2005) (for the purposes of tort liability, school board had no duty to monitor or supervise charter school's employees pursuant to Fla. Stat. § 1002.33).

10

and (6) Defendant acted with discriminatory purpose or intent. *Watkins v. Bowden*, 105 F.3d 1344, 1355 (11th Cir. 1997).

Plaintiff alleges that Defendant's employees harassed her about closing Wilbesan, demeaned her authority, failed to contact Wilbesan's board of directors and Plaintiff, and had her sign a letter relating to management of Wilbesan under duress. (Dkt. 18, ¶¶ 75-80). Plaintiff has, however, failed to allege that Defendant was her employer.[3] Moreover, Plaintiff has not alleged any harassment "based on" her race, as required to state a claim. *See Robinson v. LaFarge N. Am., Inc.*, No. 06-15000, 2007 WL 1748109, *4 (11th Cir. June 19, 2007) (quoting *Gupta v. Fla. Bd. of Regents* 212 F.3d 571, 583 (11th Cir. 2000)) ("the statements and conduct must be of a [racial] nature" or "relate to the [race] of the actor or of the offended party"). Plaintiff has also failed to allege any racial harassment directed at her that occurred pursuant to a municipal "custom or policy," as required to maintain liability under 42 U.S.C. § 1983. *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Plaintiff's claim for Hostile Work Environment (Count V) is accordingly dismissed.

### C.   *State Law Claims*

#### 1.   *Tortious Interference*

In Count II, Plaintiff alleges that "Staley's illegally (*sic*) and malicious actions eventually had the effect of causing the contract between Wilbesan and White to be terminated." (Dkt. 18, ¶ 48).

---

[3] Plaintiff's claim is clearly labeled as one for "hostile work environment." However, to the extent Plaintiff is generally alleging an equal protection claim, she has not identified a similarly situated person, as required to state a claim. *Thigpen v. Bibb County, Ga., Sheriff's Dept.*, 223 F.3d 1231, 1236-37 (11th Cir. 2000), *abrogated on other grounds, Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Plaintiff's allegations concern only Defendant's treatment of other white-owned charter schools, again highlighting that Wilbesan, not Plaintiff, has standing to maintain an equal protection claim.

To state a claim for tortious interference, Plaintiff must allege: (1) the existence of a business relationship; (2) knowledge of the relationship on the part of Defendant; (3) an intentional and unjustified interference with the relationship by Defendant; and (4) damage to Plaintiff as a result of the breach of the relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994).

Plaintiff does not allege that Defendant caused Wilbesan to terminate its relationship with her. Rather, she alleges that Defendant terminated its contract with Wilbesan. (Dkt. 18, ¶ 57). Assuming that Plaintiff has standing to bring this claim as a third-party beneficiary of the contract, Plaintiff's claim fails because Defendant was a party to the contract to which she alleges the interference was directed. *See Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir. 2001) ("a claim for tortious interference with contract cannot lie where the alleged interference *is directed at a business relationship to which the defendant is a party.*") Plaintiff's claim for Tortious Interference of White's Contract with Wilbesan which Resulted in Violation of the Fourteenth Amendment Right to Property and 42 U.S.C. § 1983 (Count II)[4] is dismissed **with prejudice**.

2. *Defamation*

In Count IV, Plaintiff alleges that she was defamed by Defendant in writing on two occasions. First, on January 23, 2004, she alleges that Staley falsely stated in writing that "There was evidence of poor fiscal management" and "During the visit financial discrepancies were noted by the finance department." (Dkt. 18, 65). On February 11, 2004, Plaintiff alleges that an

---

[4] To the extent Plaintiff incorporates a due process claim in Count II, this claim is dismissed for lack of standing, as set forth in Section A.

unidentified employee of Defendant wrote a letter stating: "The principal, Mary White, has demonstrated a history of being mentally unstable as observed by other charter office staff." (Dkt. 18, 63).

Defendant argues that these statements were made by Defendant's employees in the scope of their duties and are therefore afforded absolute immunity. *See e.g., Stephens v. Geoghegan*, 702 So. 2d 517, 522 (Fla. 2d DCA 1997) (applying public official immunity). Specifically, Defendant argues that the statements were made by "Defendant's charter school staff who were involved with the oversight of Wilbesan Charter School and the eventual termination of that school's charter." (Dkt. 19 at 16). However, these facts are not evident from the face of Plaintiff's Amended Complaint. Defendant's motion to dismiss Count IV is therefore denied. *Fariello v. Gavin*, 873 So. 2d 1243, 1245 (Fla. 5th DCA 2004) (*reversing dismissal where facts demonstrating absolute immunity were not evident from the face of the complaint*).

3.   *Florida Whistleblower's Act*

Plaintiff brings Count XI, her final cause of action, pursuant to Florida's public employees' Whistleblower's Act ("FWA"). To state a cause of action under the FWA, Plaintiff must allege that: 1) prior to her termination she made a disclosure protected by the statute; 2) she was discharged; and 3) the disclosure was not made in bad faith or for a wrongful purpose, and did not occur after the agency's personnel action against Plaintiff. *Walker v. Fla. Dep't of Veterans' Affairs*, 925 So. 2d 1149, 1150 (Fla. 4th DCA 2006). In support of her FWA claim, Plaintiff alleges that Defendant's agents falsified a safety report, that Plaintiff reported this to Defendant's Chief Officer, and that in retaliation, Defendant put Wilbesan on probation and eventually closed the school.

Defendant argues that Plaintiff has failed to allege exhaustion of administrative remedies,

which is required by the FWA for local government employees "if that authority has established by ordinance an administrative procedure for handling such complaints or has contracted with the Division of Administrative Hearings." Fla. Stat. § 112.3187(8)(b). Defendant has not, however, alleged the existence of any hearing procedure complying with the statutory criteria. *See also Miller v. Stanmore*, 636 F.2d 986, 991 (5th Cir. 1981) (holding that *pro se* plaintiffs should be afforded an opportunity to allege exhaustion).[5]

It does appear, however, that Plaintiff's claim is untimely under the FWA, which provides that actions shall be filed within 180 days of a decision by a local government authority or within 180 days from the prohibited action. Fla. Stat. § 112.3187 (8). The prohibited action took place, at the latest, on or about August 4, 2005, when Wilbesan's charter was terminated. (Dkt. 18, ¶ 15). Plaintiff filed her complaint on September 5, 2005, more than one year after the termination letter. (Dkt. 1). Plaintiff's claim pursuant to Florida Whistleblower's Act, Fla. Stat. § 112.3187 (Count XI) is therefore dismissed.

*Conclusion*

Based on the foregoing, it is **ORDERED AND ADJUDGED**:

1) Defendant's Motion to Dismiss the Plaintiff's Amended Complaint (Dkt. 19) is **GRANTED IN PART**. Counts I, II, V, VI, VII, VIII, IX, X, and XI are **DISMISSED**. Counts I, II, VI, VII, VIII, IX, and X are dismissed **with prejudice**.

2) Defendant's Motion to Dismiss (Dkt. 19) is **DENIED IN PART** as to Counts III and

---

[5] Defendant also argues that the FWA claim fails because Plaintiff has not alleged she was an employee of Defendant. However, the FWA provides: "[t]his section protects employees *and persons* who disclose information on their own initiative in a written and signed complaint." Fla. Stat. § 112.3187(7). The FWA is to be liberally construed. *Fla. Dep't of Educ. v. Garrison*, 954 So. 2d 84, 86 (Fla. 1st DCA 2007). While Defendant's argument may have merit, Defendant has cited no case limiting the protections of the FWA to employees, and the Court therefore declines to dismiss the claim on this ground.

IV.

3) Plaintiff is granted leave to file an amended complaint with **fifteen (15) days** of the date of this Order as to those counts not dismissed with prejudice.

4) Defendant's Alternative Motion to Consolidate (Dkt. 19) is **DENIED**.

**DONE AND ORDERED** in chambers this 9th day of July, 2007.

JAMES D. WHITTEMORE
**United States District Judge**

Copies to: Plaintiff *pro se,*
Counsel of Record