UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARY WHITE,

            Plaintiff,

vs.                                                        Case No. 8:06-CV-1626-T-27MAP

SCHOOL BOARD OF HILLSBOROUGH
COUNTY,

            Defendant.
_____/

## ORDER

**BEFORE THE COURT** is Defendant's Motion for Summary Judgment (Dkt. 51), to which

Plaintiff has responded in opposition (Dkt. 58), and Defendant's supplemental brief (Dkt. 63), filed

pursuant to this Court's Order (Dkt. 62), to which Plaintiff has responded in opposition (Dkt. 64).[1]

Upon consideration, Defendant's Motion is GRANTED.

### *Background*

        In this action, Plaintiff Mary White ("Plaintiff") alleges that the Hillsborough County School

Board ("Defendant") terminated the charter for Wilbesan Charter School ("Wilbesan"), in retaliation

for Plaintiff's attempts to have certification requirements for a teacher waived and for her report that

Defendant allegedly falsified a fire safety inspection. Plaintiff also alleges that two of Defendant's

---

[1] On November 6, 2007, Plaintiff, who is proceeding *pro se*, was advised of the provisions of Rule 56, pursuant to *Johnson v. Pullman, Inc.*, 845 F.2d 911 (11th Cir. 1988). (Dkt. 56).
        On December 19, 2007, Defendant filed an Amended Motion for Summary Judgment (Dkt. 61), at the direction of this Court (Dkt. 60), in an effort to clarify citations to the record. Because the Amended Motion is substantively identical to the original Motion for Summary Judgment, no further response by Plaintiff was required. As set forth at the conclusion of this Order, the Clerk is directed to the terminate the Amended Motion for Summary Judgment.

employees made false statements concerning her mental state and her financial management of Wilbesan. Plaintiff brings a claim for retaliation pursuant to 42 U.S.C. § 1983 and the First Amendment (Count I) and a state law claim for defamation (Count II).[2] (Sec. Am. Compl., Dkt. 44).

Wilbesan opened as a charter school in July 2003, pursuant to a contract between Wilbesan and Defendant, which was executed by Plaintiff. (Dkt. 44, ¶ 6; Case No. 8:05-cv-2341, Dkt. 17-2).[3] Plaintiff was the director of Wilbesan. *Id.* In August 2003, Plaintiff requested that certification requirements be waived in order for Michael Nelson, a "black military man," to become a vocational teacher. (Dkt. 44, ¶¶ 6, 27; Dkt. 52, Exh. 7). On August 15, 2003, Donnie Evans, Defendant's Chief District Academic Officer, denied this request because Nelson did not meet "the requirements for any course in the Middle School curriculum." (Dkt. 52, Exh. 7). Plaintiff alleges that Defendant's employee, Charlene Staley, was angered by White's efforts to have a "black military man" certified as a vocational teacher. (Dkt. 44, ¶ 6-7). Plaintiff alleges that Staley told her that she was going to close Wilbesan and "began a malicious negative campaign of placing White in a false light to destroy the contract between White and Wilbesan." (Dkt. 44, ¶ 7).

Plaintiff contends that she was the subject of two defamatory statements. First, "[o]n January

---

[2] On July 9, 2007, this Court dismissed the following claims in Plaintiff's First Amended Complaint: Disparate Treatment in Violation of 42 U.S.C. § 1983 and Fourteenth Amendment to the U.S. Constitution (Count I); Tortious Interference of White's Contract with Wilbesan which Resulted in Violation of the Fourteenth Amendment Right to Property and 42 U.S.C. § 1983 (Count II); Hostile Work Environment (Count V); Deprivation of White's Property without Due Process of Law in Violation of the Fourteenth Amendment and 42 U.S.C. § 1983 (Count VI); Selective Enforcement of Laws in Violation of Fourteenth Amendment and 42 U.S.C. § 1983 (Count VII); Unequal Protection of Laws in Violation of the U.S. Constitution Fourteenth Amendment and 42 U.S.C. § 1983 (Count VIII); Civil Conspiracy to Deprive White of her Civil Rights that Resulted in Selective Enforcement of the Laws and Denial of Equal Protection of Laws (Count IX); Action for Neglect to Prevent Civil Rights Violation (Count X); and Florida Whistleblower's Act pursuant to Fla. Stat. § 112.3187 (Count XI). (Dkt. 43). Plaintiff filed a Second Amended Complaint containing only those claims that survived Defendant's motion to dismiss: First Amendment retaliation and defamation. (Dkt. 44).

[3] Plaintiff cited to this contract, which is contained as an exhibit in the case against Defendant by Wilbesan Charter School (Case No. 8:05-cv-2341, Dkt. 17-2), in her response to Defendant's supplemental brief. (Dkt. 64 at 2).

23, 2004 Staley framed and planted false evidence in writing that under White's administration as principal of WCS, 'There was evidence of poor fiscal management,' and 'During the visit financial discrepancies were noted by the finance department.'" (Dkt. 44, ¶ 39).[4] As a result of the January 23, 2004 review of Wilbesan's financial records by the Charter Program Office, Defendant hired KPMG, an accounting firm, to complete an audit of Wilbesan. (Dkt. 58, Exh. 29). In a February 2, 2004 letter to Lori Nissen, a Senior Manager of KPMG, Evans noted "discrepancies in the school's financial records." (*Id.*)   Plaintiff alleges that the KPMG audit revealed: "no instances of noncompliance that are required to be reported under Government Auditing Standards," "no improper or illegal expenditures," and "no violations of laws, rules, regulations or contractual provisions, no improper or illegal expenditures, or other matters requiring correction." (Dkt. 44, ¶¶ 40-43).   Although Defendant does not contest these findings, Defendant alleges that the KPMG report showed a $21,000 deficit as of December 31, 2003, which Plaintiff disputes. (Dkt. 52, Exh. 45 at 4).

Plaintiff also alleges that she was defamed by a statement by Carolina LaRosa, a school social worker for charter schools, in a February 2004 memorandum to Ken Gaughan, the Supervisor for School Social Work Services and Charlene Pirko, Liaison for Charter Schools. (Dkt. 52, Exh. 17). In the memorandum, LaRosa stated, in part: "The principal, Mary White, has demonstrated a history of being mentally unstable as observed by other charter office staff." (*Id.*)   Gaughan faxed the memorandum to Jena Hodges, a Charter Office employee. (Dkt. 58, Exh. 8). Evans faxed the letter to Dr. Adewale Adewumi, a Wilbesan board member. (*Id.*)

On March 9, 2004, the Board voted to place Wilbesan on probationary status through June

---

[4]   Plaintiff has not provided a copy of the alleged January 23, 2004 communication.

3

30, 2004, during which time Wilbesan was to take corrective action "to address staff concerns." (Dkt. 52, Exh. 46). The probationary status was lifted in July 2004, after corrective action was taken. (Dkt. 52, Exh. 49). In March 2005, Wilbesan received a letter from the Superintendent, Dr. Earl J. Lennard, stating that he was recommending that the charter be terminated based on Wilbesan's failure to meet performance goals on the FCAT, lack of cooperation by Plaintiff, and failure to adequately report personnel data to the district. (Dkt. 52, Exh. 16 at 3-4). In July 2005, the Board voted to place Wilbesan on probationary status instead, due to improvements in student performance. (Dkt. 52, Exh. 49).

On June 20, 2005, Plaintiff wrote a letter to Dr. Jim Hamilton, which Plaintiff copied to Wilbesan's Board of Directors. (Dkt. 52, Exh. 12). In the letter, Plaintiff stated that a fire safety inspection on June 6, 2005, which reported deficiencies in egress, was "false" because Wilbesan had relocated and vacated the location at which the inspection was performed. (*Id.*) Plaintiff stated: "I stand firmly on the fact that he could not have inspected WCS' Campus and as far as I am concerned the document has been falsified." (*Id.*)[5]

On August 3, 2005, during an inspection of Wilbesan's new location, a county fire inspector noted deficiencies and ordered Plaintiff not to open the school until she had corrected the deficiencies. (Dkt. 52, Exh. 49). The next day, the school opened with twenty-three students. (*Id.*) That same day, the Hillsborough County Fire Marshall issued a Cease and Desist Order, and the

---

[5] Plaintiff has devoted a substantial portion of her brief to arguing that the closure of Wilbesan was retaliatory because other charter schools were not closed even though they had similar violations and that the fire code was not properly applied to Wilbesan. Although Plaintiff's allegations are acknowledged, the causation prong of Plaintiff's First Amendment claim is not reached in this analysis. Plaintiff's individual claims regarding disparate treatment, selective enforcement, and unequal protection of the laws, based on the allegedly disparate application of the fire code, were previously dismissed for lack of standing. (Dkt. 43 at 5; *see also* Case No. 05-cv-2341, Dkt. 32 at 7).

Superintendent notified Plaintiff that Wilbesan was closed as an emergency measure. (Dkt. 51, Exh. 36). He also recommended immediate termination of the charter pursuant to Fla. Stat. § 1002.338(8)(d), which allows termination "if the health, safety, or welfare of the students is threatened." (*Id.*) Plaintiff alleges that Defendant terminated Wilbesan's charter in retaliation for her reporting the allegedly falsified fire safety inspection and for requesting that certification requirements for Nelson be waived. (Dkt. 44, ¶¶ 27-29).

In the instant motion, Defendant argues that Plaintiff's First Amendment retaliation claim fails because her letters requesting a waiver for Nelson and reporting the allegedly falsified fire safety inspection did not constitute protected speech, were not made in a public forum, and Plaintiff did not suffer any adverse action based on her communications. Defendant argues that Plaintiff's defamation claim fails because the statements by LaRosa and Staley were opinion, were not published to third parties, and were outside the scope of their employment, or alternatively, were protected by an absolute and/or qualified privilege. As set forth below, the motion is granted as to Plaintiff's First Amendment claim because her communications were made pursuant to her duties as director of Wilbesan and therefore do not constitute protected speech. The motion is also granted on Plaintiff's defamation claim because Defendant has demonstrated the applicability of the affirmative defense of privilege.

### Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable

substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. Plaintiff's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

***Discussion***

***A.    42 U.S.C. § 1983 - First Amendment***

In Count I, which is brought pursuant to 42 U.S.C. § 1983 and the First Amendment, Plaintiff alleges that she was retaliated against for requesting waiver of the certification requirements for Nelson and for reporting an allegedly falsified fire safety inspection.[6]   The First Amendment

---

[6] Defendant does not challenge its municipal liability under section 1983.

provides varying levels of protection for conduct taken in retaliation for speech, depending on the plaintiff's status as a private citizen or public employee. *Compare Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005), *with Garcetti v. Ceballos*, 126 S. Ct. 1951, 1961 (2006). Thus, it must initially be determined whether Plaintiff spoke as a citizen, as she alleges, or as a public employee subject to certain restrictions, as Defendant contends. Plaintiff argues that she was an employee of Wilbesan, not Defendant, that all Wilbesan employees are private employees, and that she is therefore a private citizen for First Amendment purposes. Defendant contends that Plaintiff, as the director of a charter school, is most closely analogized to an independent contractor, whose speech is subject to the same restrictions applicable to public employees. *See Bd. of County Comm'rs, Wabaunsee County v. Umbehr*, 518 U.S. 668, 678 (1996). This Court agrees.

In Florida, all charter schools are, by law, public schools. *See* Fla. Stat. § 1002.33(1). Charter schools are subject to significant oversight by the school district in which they are located. *See e.g.,* Fla. Stat. § 1002.33(5)(b)1. (sponsor shall monitor and review progress toward charter goals, revenues, and expenditures and shall ensure compliance with state's education accountability system); Fla. Stat. § 1002.33(8) (setting forth grounds and procedures for sponsor to not renew or terminate charter); Fla. Stat. § 1002.33(9)(l), (o), (q) (charter school shall report progress annually to sponsor and report on steps taken to conduct deficiencies); Fla. Stat. § 1002.33(20) (enumerating administrative and educational services sponsor must supply to charter schools). Plaintiff correctly notes, however, that "[i]ndividuals or groups of individuals who contract their services to the charter school are not public employees." Fla. Stat. § 1002.33(12)(I).

In *Umbehr*, the Supreme Court determined that the deference afforded to public employers in regulating employee speech is also warranted in regulating the speech of independent contractors

because the employer "needs to be free to terminate both employees and contractors for poor performance, to improve the efficiency, efficacy, and responsiveness of service to the public, and to prevent the appearance of corruption." *Umbehr*, 518 U.S. at 674.  Given Defendant's legally-mandated responsibility for Wilbesan, the same deference to governmental objectives is appropriate. As in *Umbehr*, in terminating Wilbesan's contract, Defendant "exercised contractual power, and its interests as a public service provider, including its interest in being free from intensive judicial supervision of its daily management functions, are potentially implicated. Deference is therefore due to the government's reasonable assessments of its interests *as contractor*." *Id*. at 678 (emphasis in original).

Although Plaintiff is not, by law, a public employee, her status for First Amendment purposes is analogous to an independent contractor, as she was the director of a public school and was the signatory to the contract between Defendant and Wilbesan. (*See* Case No. 8:05-cv-2341, Dkt. 17-2). *Cf. Umbehr v. McClure*, 840 F. Supp. 837, 838 (D. Kan. 1993) (Plaintiff operated a company with the exclusive contract to haul trash).  Like Umbehr, Plaintiff suffered an injury, and therefore possesses standing to sue, due to the termination of the contract she signed.  Moreover, as discussed below, Plaintiff would not have had any occasion to speak as a citizen on whether Defendant waived certification requirements for a teacher or whether Defendant falsified the fire safety report.  Under the unique facts of this case, Plaintiff most closely resembles an independent contractor for First Amendment purposes and is therefore subject to certain restrictions on her speech. *See also Umbehr*, 518 U.S. at 680 ("[i]ndependent contractors appear to us to lie somewhere between the case of government employees . . . and persons with less close relationships with the government."); *Shahar v. Bowers*, 114 F.3d 1097, 1103 (11th Cir. 1997) (applying public employee standards to applicant

8

challenging withdrawal of job offer as retaliatory).

Accordingly, to establish a First Amendment retaliation claim, Plaintiff must show: (1) her speech involved a matter of public concern; (2) her speech outweighed Defendant's legitimate interest in efficient public service; (3) the speech played a substantial part in Defendant's decision to terminate her charter; and (4) Defendant would not have made the same decision in the absence of the protected speech. *Quinn v. Monroe County*, 330 F.3d 1320, 1329 (11th Cir. 2003). The first two factors are questions of law, while the latter two are questions of fact. *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1157 (11th Cir. 2002); *Battle v. Bd. of Regents for the State of Ga.*, 468 F.3d 755, 760 (11th Cir. 2006).[7]

Plaintiff has identified two allegedly protected expressions: her request for a waiver of the certification requirements for Nelson in August 2003 and her June 20, 2005 letter to Dr. Hamilton contending that Defendant falsified the fire safety inspection. The threshold question is whether Plaintiff's expressions were made as a citizen on a matter of public concern, or as an employee in the course of performing her job duties. *See Garcetti*, 126 S. Ct. at 1961. Thus, before reaching the issue of whether the expression was on a matter of public concern, the Court addresses whether Plaintiff actually spoke as a citizen. *D'Angelo v. Sch. Bd. of Polk County*, 497 F.3d 1203, 1209 (11th Cir. 2007). Here, she did not.

Plaintiff alleges that she wrote a letter of waiver "for a black military man to become certified

---

[7] Defendant has argued that it terminated Wilbesan's charter for reasons not relating to Plaintiff's expression. (Dkt. 51 at 10-11). This argument goes to the third and fourth prongs of the retaliation inquiry and is not appropriate for disposition on summary judgment. *Tucker v. Talladega City Schs.*, 171 F. App'x 289, 292 (11th Cir. 2006). Defendant has also argued that Plaintiff did not suffer any injury as a result of the termination of Wilbesan's charter. (Dkt. 51 at 10). This argument was previously addressed and rejected by the Court in the Order on Defendant's motion to dismiss. (Dkt. 43 at 8-9). Defendant has not elaborated on this argument in the instant motion and the Court rejects it for the reasons previously stated.

as a vocational teacher." (Dkt. 44, ¶ 27). Plaintiff's request was made to Evans, the Chief District Academic Officer. It appears from Evans' letter that Plaintiff did nothing other than supply the information necessary to obtain a waiver. (*See* Dkt. 52, Exh. 7, "I have reviewed the information that you sent to me regarding a waiver"). Plaintiff's request dealt with a purely administrative matter, falling squarely within Plaintiff's official responsibilities as director of Wilbesan to hire teachers. Specifically, Staley testified that "[i]t was the responsibility of the charter school principal to submit certification information to the School District." (Staley Dep. at 67).[8] Therefore, Plaintiff did not speak as a private citizen on a matter of public concern, but spoke pursuant to her duties as director of Wilbesan. In this capacity, her communication is not protected speech. *Garcetti,* 126 S. Ct. at 1959-60 (finding that the controlling factor is that plaintiff made his expressions "pursuant to his duties as a calendar deputy").

Plaintiff's second purported protected expression, her June 20, 2005 letter to Dr. Hamilton, was also written in the course of Plaintiff's job duties.   In the letter, which Plaintiff copied to the Wilbesan Board of Directors, Plaintiff argued that no fire safety inspection report could have taken place on June 6, 2005 because Wilbesan had changed location.[9] Although Plaintiff asserted in this letter "as far as I am concerned the document has been falsified," it is well-established that an allegation of fraud or other governmental misconduct does not dictate a finding that the communication was on a matter of public concern when the communication was made, as it was

---

[8] The Amended Complaint also alleges that White was responsible for hiring: "As such, White hired a black military man to teach auto mechanics which required him to become a certified vocational teacher." (Dkt. 44, ¶ 6).

[9] Plaintiff also disputed the amount charged to Wilbesan for a public records request and mentioned that in reviewing unspecified documents she found that some stated they had been copied to her but were not, and she was troubled by a letter to Congressman Davis that was not copied to the Wilbesan Board of Directors or other school officials. Plaintiff alleges, however, that she was terminated only for challenging the veracity of the fire inspection. (Dkt. 44, ¶¶ 29-32).

here, in connection with the plaintiff's job duties. *See e.g., Garcetti*, 126 S.Ct. at 1959-60 (holding that calendar deputy's memorandum reporting false statements in affidavit used to obtain search warrant was made pursuant to his job duties and not protected); *Phillips v. City of Dawsonville*, 499 F.3d 1239, 1242 (11th Cir. 2007) (finding that city's clerk and treasurer's communications about mayor's fraud to other persons associated with City government were made pursuant to official duties and not protected). Staley specifically testified that the principal or the administration of a charter school had responsibility for the accuracy of fire safety inspection reports. (Staley Dep. at 33). In addition, Plaintiff's letter was not communicated to anyone other than Dr. Hamilton and the Wilbesan Board of Directors. Accordingly, the Court finds that the June 20, 2005 letter was written pursuant to Plaintiff's duties as director of Wilbesan and that she was not speaking as a private citizen on a matter of public concern.

Plaintiff has not demonstrated that she engaged in speech protected by the First Amendment. Defendant's motion for summary judgment is therefore granted on Plaintiff's claim pursuant to 42 U.S.C. § 1983 for First Amendment retaliation (Count I).

### B. Defamation

To state a cause of action for defamation under Florida law, Plaintiff must allege that: (1) Defendant published a false statement; (2) about Plaintiff; (3) to a third party; and (4) that the falsity of the statement caused injury to Plaintiff. *Valencia v. Citibank Int'l*, 728 So. 2d 330, 330 (Fla. 3d DCA 1999); *see also Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001). Plaintiff alleges that Defendant's employees made two false statements concerning her. First, she alleges that "[o]n January 23, 2004 Staley framed and planted false evidence in writing that under White's administration as principal of WCS, 'There was evidence of poor fiscal management,'

11

and 'During the visit financial discrepancies were noted by the finance department.'" (Dkt. 44, ¶ 39). Second, she contends that LaRosa's February 2004 memorandum was defamatory because it stated, in part: "The principal, Mary White, has demonstrated a history of being mentally unstable as observed by other charter office staff."

1.    *February 2004 memorandum*

Defendant argues that LaRosa's memorandum was not "published" because it was communicated only to Defendant's employees. "When the entity alleged to have committed the defamation is a corporation, the courts have held that statements made to corporate executive or managerial employees of that entity are, in effect, being made to the corporation itself, and thus lack the essential element of publication." *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007). LaRosa addressed the memo to two supervisory employees, Gaughan, the Supervisor of School Social Work Services, and Pirko, the Charter Schools Liaison. Plaintiff has, however, introduced evidence that Evans faxed the memorandum to Dr. Adwuemi, a Wilbesan Board member. Assuming, for the purposes of this discussion, that the memorandum was "published" to at least one person who was not an employee of Defendant, the Court finds that it is nonetheless subject to a qualified privilege, as Defendant argues.[10]

Pursuant to Florida law, a qualified privilege exists for communications "made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty . . . if made to a person having a corresponding interest or duty, even though it contains matter which

---

[10] Defendant also argues that the memorandum is subject to an absolute privilege. Florida provides an absolute immunity from defamation suits to "[p]ublic officials who make statements within the scope of their duties." *Cassell v. India*, 964 So. 2d 190, 194 (Fla. 4th DCA 2007) (quoting *Stephens v. Geoghegan,* 702 So.2d 517, 522 (Fla. 2d DCA 1997)). Although reporting safety concerns regarding employees may well have been part of LaRosa's duties as a school social worker, Defendant has cited to no record evidence supporting this contention.

would otherwise be actionable, and though the duty is not a legal one but only a moral or social

obligation." *Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984). The elements of a qualified

privilege include: (1) good faith; (2) an interest in the subject by the speaker or a subject in which

the speaker has a duty to speak; (3) a corresponding interest or duty in the listener or reader; (4) a

proper occasion; and (5) publication in a proper manner. *Thomas v. Tampa Bay Downs, Inc.*, 761

So.2d 401, 404 (Fla. 2d DCA 2000). Defendant has the burden to prove the affirmative defense of

qualified privilege. *Miami Herald Pub. Co. v. Ane*, 458 So. 2d 239, 240 (Fla. 1984). Once it is

determined that the qualified privilege exists, however, there is a presumption of good faith which

Plaintiff must rebut with evidence of express malice. *Thomas*, 761 So.2d at 404. Privilege may be

decided as a question of law by the court "[w]here the circumstances surrounding a defamatory

communication are undisputed, or are so clear under the evidence as to be unquestionable." *Nodar*,

462 So. 2d at 810.

LaRosa's memorandum stated:

> I hope for the opportunity to speak with you both about a concern I currently have
> with serving Wilbesan Charter School. I have concerns about my personal safety in
> returning to Wilbesan Charter School at the current time. My concerns are four fold:
> 1) The principal, Mary White, has demonstrated a history of being mentally unstable
> as observed by other charter office staff. 2) The principal appears to be at the peak
> of feeling threatened by the information reported as a result of the review process.
> 3) The principal appears to perceive the actions of the charter office to be a personal
> affront. 4) Other district charter staff members have expressed their personal safety
> concerns about returning to Wilbesan Charter School at the present time.

> In understand that Wilbesan Charter School is currently being financially audited and
> that we are awaiting those findings to determine the next course of action for the
> school's contract. While other district charter staff members have expressed their
> safety concerns to me, they have not been formally addressed. I am currently
> planning to not return to the school site until my and the other charter staff members'
> safety concerns are addressed. I am available to discuss these concerns at your
> convenience. Thank you for your support.

LaRosa was essentially communicating a concern about her safety as well as concerns expressed by fellow employees, based on Plaintiff's alleged behavior as director of Wilbesan. LaRosa, Gaughan, Pirko, Evans and Dr. Adewumi, the Wilbesan Board member, each had an interest in Plaintiff's performance as director of Wilbesan, as well as in the safety and security of Wilbesan's staff and students. *See Nodar*, 462 So. 2d at 8 (Fla. 1984) (finding that parent's statements at school board meeting about plaintiff's performance as a teacher were privileged because they were on a matter of public concern and related to performance of the board's employee); *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (finding that statements to plaintiff's co-workers regarding the reasons for his firing were privileged, as they had an interest in the disciplinary process and "in the safety and security of their workplace."). Here, the communications were made privately to a select group of interested persons and were "activated at least in part by the employee's purpose to serve his or her employer" and by a "moral or social" duty. *See Thomas*, 761 So. 2d at 404. Accordingly, LaRosa's memorandum is subject to a qualified privilege.

Plaintiff is therefore required to show that LaRosa or Evans acted with express malice, which exists "where the primary motive for the statement is shown to be an intention to injure the plaintiff." *Id.* LaRosa avers that she spoke based on a personal concern for her own safety and the safety of her fellow employees, and that she did not speak out of ill will or spite toward Plaintiff. (LaRosa Aff. ¶ 6). LaRosa's contention in this regard is not conclusory, as Plaintiff argues. (Dkt. 58 at 6). Plaintiff cites to no record evidence indicating that LaRosa or Evans acted with express malice. Accordingly, the Court finds that LaRosa's February 2004 memorandum is subject to a qualified privilege as a matter of law.

2.    *January 2004 communication*

Plaintiff has not provided a copy of the January 2004 communication she alleges to have been

14

made by Staley. Defendant, however, has not disputed that Staley wrote a letter on January 23, 2004, which stated: "There was evidence of poor fiscal management," and "During the visit financial discrepancies were noted by the finance department." (Dkt. 58, Exh. 27). Plaintiff alleges that this statement was false because the KPMG audit revealed no violations of accounting standards, regulations, or law. Plaintiff also disputes Defendant's contention that there was a $21,000 deficit at the end of 2003, a contention for which Defendant has provided no competent evidence. (Staley Dep. at 92-93).[11]   Accordingly, the Court accepts for purposes of this discussion that Staley's statement was false. The Court also assumes that allegations of financial mismanagement at Plaintiff's school imputed undesirable characteristics to Plaintiff, which Defendant has not contested. There is, however, simply no evidence regarding "publication" of Staley's statement. Based on the record, it is impossible to determine to whom this statement was made and whether it was made to any third party.[12]

To the extent Plaintiff argues that the statement was published to KPMG in Evans' letter to Nissen requesting an audit and noting "discrepancies in the school's financial records" (Dkt. 58, Exh. 29), the Court finds that the absolute privilege applies to this communication. Florida provides an absolute immunity from defamation suits to "[p]ublic officials who make statements within the scope of their duties." *Cassell v. India*, 964 So. 2d 190, 194 (Fla. 4th DCA 2007) (quoting *Stephens*

[11]  Pursuant to Fla. Stat. § 1002.33(7)(a)10, the charter of a charter school shall require auditors to notify the charter school board, the sponsor, and the Department of Education of any "deficit financial position." Defendant has not provided a copy of the report, but cites to an April 15, 2004 "Corrective Action Plan" for Wilbesan, which noted the alleged deficit as one of a number of items for corrective action. Plaintiff disputed the deficit in the Corrective Action Plan, stating "There were no discrepancies found by the auditor from KPMG." (Dkt. 52, Exh. 45 at 4). Based on this record evidence, the existence of a $21,000 deficit is a disputed issue.

[12]  Plaintiff attempts to show publication by citing to a newspaper article that reads in relevant part: "Allegations for improper use of corporal punishment and financial trouble are 'not true,' said Mary White, principal of Wilbesan's Charter School." (Dkt. 58, Exh. 27 at 2). There is, however, no record evidence demonstrating that Staley's communication was disseminated to the news media. Absent additional evidence about the recipients of Staley's January 23, 2004 letter, the Court cannot find that it was "published" to anyone, including the newspaper.

*v. Geoghegan,* 702 So.2d 517, 522 (Fla. 2d DCA 1997)).  The immunity applies to "all public officials, regardless of the branch of government or the level of the official."  *Id.* (citing *Hauser v. Urchisin,* 231 So. 2d 6, 8 (Fla.1970)).  Pursuant to Florida law, the sponsor of the charter school "shall monitor the revenues and expenditures of the charter school."  Fla. Stat. § 1002.33(5)(b)b. It appears from Evans' letter that the performance review was conducted by the Charter Program Office and that the request was made pursuant to this review.  Because this communication was made pursuant to Defendant's official duties to monitor Wilbesan's finances, it is absolutely privileged as a matter of law.

Defendant has sufficiently demonstrated the existence of the affirmative defense of privilege as to Plaintiff's defamation claim.  Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's claim for defamation (Count II).

### Conclusion

Based on the foregoing, it is **ORDERED AND ADJUDGED**:

1)      Defendant's Motion for Summary Judgment (Dkt. 51) is **GRANTED** and the Clerk is directed to terminate Defendant's Amended Motion for Summary Judgment (Dkt. 61).

2)      All pending motions are denied as moot.

3)      The Clerk is directed to enter judgment in favor of Defendant and close this case.

**DONE AND ORDERED** in chambers this _25_ day of January, 2008.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record
*Pro Se* Plaintiff